Hospital et al. And the appellant actually is a third party Aetna. And the only counsel is Mr. McGinley. Yes, you sure can, whenever you're ready. It's been a long time since I've had one where it's just one counsel. My notes say good morning, but I'm going to say good afternoon, your honors. And may it please the court, Michael McGinley of Deckard LLP on behalf of Aetna, Inc. One thing, when I look at your brief to us, which is a really well done brief, and it really gets into some specificity as to why you want particular documents beginning on page 20 and why you thought that they should be sealed despite the strong presumption that otherwise the public has access. And I compare it with what was filed with the district court, and they're vastly different. Generalizations in the motion, generalizations in Mr. Morris's affidavit. And the court said, look, you just didn't give me enough specificity to overcome this strong presumption. Why wasn't this really well done piece done here at the district court? Well, so there's a few very basic practical reasons. And of course, I would dispute the premise, but I won't fight the premise here. Well, you've done good on this one. Well, thank you. I appreciate that. The first practical reason was the first set of briefing that occurred was limited to five pages, and there was four days notice. The motion was 10 pages, and the affidavit was three or four pages. Right. So the second set of briefing occurred because we found out two months after the fact that the exhibits had been admitted. Although I don't think at this point anybody has really seen them, have they, in the public? Our understanding is no one has seen them. But at the time, it came entirely unexpected to us. As far as Aetna knew, the exhibits were not being used at the evidentiary hearing or otherwise admitted into evidence. Let me make sure I get the facts right on that. It had been ruled moot, right, because of the procedural posture at the point where the court, it looked like several people, there were a bunch of people who wanted things sealed, and it was decided, okay, we're dropping the appeal, and that's moot, right? So what happened was the parties put forth their pretrial exhibit lists, which were quite extensive. That resulted in 35 motions to seal being entered before the court. And the court quite pragmatically, I would say, said to the parties, look, we don't need to resolve all this. Pair down your exhibit lists. In the process of them pairing it down, they removed all of the Aetna exhibits. And so as a result, the court denied the initial motion to seal as moot. All right. And then you don't know what, it's only later when they want to add these in that it comes up again. Well, not even really that, Your Honor. So not until December did we find out that back in October, the parties had moved to admit the six Aetna exhibits. No notice was given to Aetna? No notice. No. Under the protective order, notice was required to be given to them. How did you find out? So what happened was on, I believe it was December 7th, the letters that had been sent to the district court asking for the exhibits to be admitted were put up on the docket with no context. So we saw this. And then a day later, the court issued an order saying that the exhibits are admitted. And then that same day, he issued his merits ruling on the preliminary injunction. And then only later, in March, did he issue the footnote order, correct? Correct. So I don't remember the exact set of days in between when his order admitting the exhibits and when we filed. And I wasn't involved. My colleague, Justin Romeo, was. And I think it was a pretty harried few days for him. Right after he admitted, you filed the motion. Very quickly, we filed a motion. And it wasn't ruled on, he ruled on the merits and it sat in the state. Correct. There was no hearing. And in fact, what we had asked for was, we asked for the documents to be sealed. We also asked for there to be a sort of process with the parties to try to figure out, because we didn't even really know how these were used or anything. We were entirely in the dark because we thought that our documents weren't at issue here. And then three months later, we got a footnote order. But you gave him, when you filed your motion to seal, you gave him the chart. Correct. That showed how these fell. And you gave him all these documents. Correct. Which then, when he says he has carefully reviewed the documents, I mean, there's a lot here. Yes. And, Your Honor, what I would say is, so the two depositions total over 300 pages. And I think just, frankly, just looking at them, the entire substance of the questioning was about Aetna's business practices, including contract terms, pricing, discounts that they might give, how they go about negotiating with providers. If you look at the Excel, I'm sorry, Your Honor, if you look at the Excel spreadsheet, you know, that one, to me, just, it screams out. This is an internal modeling as to what prices are being charged to all the providers within this region, what the expected volume was, what the actual volume was, and then modeling what would happen if some of those providers might leave the network, where customers would go. What your filing said, and I think in a couple places, that a lot of the information was old information. And you then later say, yep, that's still relevant, but nonetheless, was it, how old was the information? It really was not, it was not that old. So the proceedings took place in 2020. There were a few documents, most, the two strategy planning documents were from 16 and 17. But both of them were forward-looking strategic documents saying this is how Aetna views itself within the marketplace. This is how it views its competitors. Here are our strengths, weaknesses, opportunities, threats, all forward-looking projections. You had a three-year contract, didn't you? Yeah, three to four-year contracts. It differs, but as a general matter, they're. So what should the district court have done that the district court didn't do? So there's a few things. I mean, the first thing we would say is he should have sealed the information. But I have a much more pragmatic answer for you. And I think, I actually think, you know, one of the reasons. As a matter of process, what should the district court do? Yeah, so in terms of process, number one thing that should have happened, and to be clear, I don't necessarily place the blame on this piece at the district court's feet. I think it really was the parties who should have alerted Aetna to the fact that they were seeking to admit these documents that they had previously said they were not. But that makes it less an abuse of discretion for the district judge to decide as he did then. No, because I think it was incumbent on the district court, once that became clear, to give us an opportunity to have a hearing to explain. If he thought that the explanations, which we thought were completely sufficient and fully within the heartland of the case law, if he thought that more needed to be explained, he could have granted a hearing, which we asked for, and said, explain to me. You know, we could have brought Mr. Morris in, and Mr. Morris could have explained how exactly these documents are competitively sensitive. Or even without a hearing, at the very least, gone through in the opinion, a rundown of what they were and why. He seemed to say they're not, he emphasized the word now. Maybe he thought that this 2017 wasn't relevant, but didn't really articulate as to each document, which is really what we've been saying in the case law. Right, and I would say, Judge Randell, that's very similar to the error that occurred in Avandia, where this court said you can't just, with a broad brush, say. That was, Avandia was a case where there was a grant. Correct. This is a denial. And when you grant, you have to give good reasons to overcome that, quote, strong presumption, close quote, of access. Here it's different. I'm going to go back to Judge Randell's question, because I think it's very, very important. What process could be done in order to be sure that the judge had before him the concerns that you had? For example, should there have been a motion to your motion, would you please consider this in camera, or could we have some type of either office conference or, if not a hearing for the public, something so that you could get your case out there rather than a motion that has. I understand that you're walking a fine line. Right. You want to say, hey, this is, even though it's not a trade secret, which is, you know, obviously gets a lot of protection, nonetheless, it should be protected here. It isn't being, I can't say in a public document exactly all the things that are going on, but it is something that really needs to be protected. For example, the discounts we give to customers. Right. And how should the court, how should counsel and the court have gone through the process to be sure that the court had before him exactly what the concerns were? Yeah, and to be clear, our second motion invited that process and said if you would like more information, we request a hearing and the opportunity to be heard and to have this conversation. And you requested one in your September 8th motion as well. Correct. So you asked for a hearing in connection with the September 8th motion and also your second motion on December 14th. Correct. And I would say, too, if you look at, this is an issue that comes up in these merger litigations constantly, right? And one of the points we make in the brief that I think is pretty self-evident is that the information that's gathered from third parties like Aetna is gathered precisely because it's current competitive information that the government and the parties in the court will then use to assess what the competitive dynamic will be after the merger occurs. And if you look at, for example, Judge Stark in the Sabre case, we were not involved, at least I was not personally involved in that, but if you look at the end of his opinion has an appendix that explains what he did to try to deal with the fact that there's just inherently going to be these problems. And what he tried to do was to say to the parties, look, let's try to limit the exhibits both in terms of number but also in terms of what you are actually putting into the record here. And then we're going to have very limited sealing both of the courtroom and of documents. And I'm going to structure my opinion so that I don't have to say the things that would be sealed. And it's a very pragmatic approach. I would also say in preparation for this argument, I just out of curiosity, I would say I went back and looked at what happened with Independence Blue Cross's documents here. And remember, IDC was actually, you know, very central to the litigation. And so they had a motion to seal denied. They were actually given notice at the time back in October. They had a motion to seal denied. And then what they did is they worked with the parties so that the parties would only introduce, from what I can tell, the pages of the exhibits that they wanted to put into record. So am I right that the entirety of the court's reasoning is this fourth paragraph in footnote 2? Correct. Where the court says it's the interest of justice I'm letting it out. There's nothing else in the record. There's no on the record anywhere where he gives more than that, right? That's correct. Okay. So if we thought that was inadequate, what's the right step? Do we say, oh, well, these things should be under seal? Or do we send it back to him and say, you need to do more? Like take a look at the Sabre decision. You need to do more. What's the step that we should take? Yeah, so I'll give you two answers. One is we think that on this record and under the case law,  I would say all of the Third Circuit's opinions say that competitively sensitive information should be sealed. And if you look at the Apple v. Samsung case out of the Federal Circuit, admittedly it's applying. You've got to give the court something that shows that it's competitively sensitive information. Competitive sensitive information. Correct. Yeah, and I would say I think in our – That's why I keep coming back to the beginning. There were – it was some general statements both in the affidavit and in the motion. And I'm still searching for a way to get to the court. Maybe there's a motion to seal the motion that's going to follow that gives you the sensitive information because the court apparently is not willing to have an evidentiary hearing, which was asked for twice. I mean, personally, I think an evidentiary hearing, that would presumably be sealed. If you look at what happened in public here, that's essentially how the court decided the case. It said it was proper for the district judge to seal the hearing about whether there should be sealing. But I think that's the right way to do it, right? Because if there are questions – What's the right way to do it? It's to have a hearing. If there are questions – Then we should send it back. Then we should send it back. But the court didn't do a do-over because we can't conduct a hearing or do it in general. Oh, I'm sorry. Personally, I think on this record, it is clear that these redactions should have been permitted. If the court – So you're basically saying no hearing was necessary. I'm saying – Because you're asking us to make the conclusion that the public access right is outweighed because this is sensitive information. But the degree of sensitivity, as Judge Ambrose points out, you may know the degree of sensitivity. Looking at these, I can see a couple of things. I don't think IBC might want to know that about Aetna, but I don't know. I don't know for sure. If we were to decide it, I don't know whether as a matter of law you're entitled to it. The understanding is lacking. Yes, so I'll just try to clarify. Our position is that the information should have been sealed. If the court feels that there's not enough information on the record for that decision to have been made and that the proper thing to have been done was an evidentiary hearing, that would be the way to go about handling it at district court. Well, Mr. McNeely, isn't it – you've said over and over again, or at least I've understood you to be saying, that there is an acknowledgment that there's a public interest here in disclosure and there's a private interest in secrecy of confidential information. Inherent in that is an acknowledgment that there's a weighing process. Doesn't that weighing process typically happen in the context of hearing of exactly the sort you asked for twice? Yes. Yes, Your Honor. Okay. And also, the court talked about parties seeking protection of seal must demonstrate and then goes on to note that you are non-parties. It doesn't seem that that aspect of it really factored in, but it should under the case law. It should, yes. So this re-weighing, if it's going to occur, should probably be back in the district court. I do think that there needs to be a weighing of the third-party aspect. There's a reference in Westinghouse to the court considering that. I think, you know, the other thing, too, that we've stressed here is that this is not just about Aetna. And one thing I'll be clear on, this isn't like Avandia or Publica or cases where we're worried about being embarrassed by something or it's evidence that's – But it's competitive information. It's just competitive information. It's different from Independence Blue Cross, do you think? Their motion was denied, right? Their motion was denied, but then they had this process where they were, as far as we can tell, they were essentially able to get to a point where the exhibits that were introduced of their information was whittled down so that it vastly reduced the amount of competitively sensitive information. And that was denied during, before the merits ruling? So it's not – This seems to be almost an afterthought. Yeah, so my understanding is IBC's motion for sealing was denied in October, I believe, possibly before the evidentiary hearing, but at some point well before the decision. Then they were able to work with the parties to say, let's try to narrow this down. And then the last thing I would say to you, Your Honors, is that we've stressed the fact that there's a public interest involved here. It's not just Aetna, but, you know, this is information that if – I think to explain to you why the pricing information is so important, it's really the providers that – No, I think we got it. It was a good brief, and we understand the point you made that it's not just us. This affects the public too. Okay. How are the – my final question. How are the asserted injuries in your motion and declaration any different from the conclusory injuries that we rejected in the LEAP systems case? I didn't hear the first part of that, Your Honor. How are the asserted injuries in your motion and declaration any different from the conclusory injuries that we rejected in the LEAP systems case from 2011? So I don't think that the assertions in the motion and affidavit are conclusory. They're explaining why the information would be valuable to providers and how it would harm – I didn't find anything specific. As I said, it was like night and day reading your brief compared to what the motion was filed. Okay. Well, the other point I would make too is in LEAP, the court did grant ceiling on the basis of a reliance on assurances of protection, so we would actually argue LEAP is pretty favorable to us on that score. I think Judge Hardiman's opinion says although you can't rely on – if Andy is clear, you can't just rely on Rule 26, but where there are assurances of confidentiality, that is a factor. Actually, you did say something that does spur another question. You said that Independence Blue Cross was able, despite its loss or the denial of its motion, to whittle down the documents so that there was nothing that was truly injurious to IBC. Is that a possibility here? So I will say for sure if the process had unfolded how it should have and we would have had notice in October, it would have been possible. I think it would still be possible here. Is the process basically over at this point? The process is basically over at this point. I mean, I think there's probably an inherent power of the court to say that if the parties wish to say, the exhibits will be narrowed. Understood. But absent an order from the court, there's nothing prompting these other – the FTC and Jefferson and the former – the now merged entity. They've got no incentive to come in and sit down and do this at this point, do they? I mean, I think – It's over. For them, they're done. That's right. I think the court could order them to do it. I'm sure the court could order them. I'm trying to probe a little bit with Judge Ambrose's question. In these other cases and with the independent Blue Cross Blue Shield, there was an incentive for the parties to come in and do some negotiating. Given the procedural posture we're in now, I'm not seeing that there's that, but maybe I'm wrong. Is there any incentive for these other parties to come in and work with you except out of the goodness of their heart or a court order? So I think with the FTC, there's a sort of incentive in the fact that, as you might expect, Aetna is subpoenaed constantly in these investigations and these cases, and so it does put a chill if we don't think that our information can be protected under the assurances the FTC gives to our protective order. So I would think – I would hope that the FTC would be willing to do that. And, look, I would hope that Bagri and Hogan, out of professional courtesy, maybe would say we're willing to meet with you and try to figure this out. In my world, it's not out of the goodness of your heart, the world I was in. It's whether you have business leverage. The question is does Aetna have business leverage in order to get something done, but we don't know the answer to that. If you were to lose, could you somehow refile something with the district court? I don't – I'm not sure how that would – I don't know. I don't know. I'm just asking. No, I don't think so. I mean, you know, obviously we filed twice, and we sought a hearing, and we sought to have further proceedings if the court thought there was more information that would be useful to it. Do you know if IBC or any other competitor has made a move to get these documents from the district court? We don't know. They could. Well, yeah. I mean, it could have happened even just through their counsel. I mean, I can just say personally if I – if the shoe was on the other foot, I would be very reluctant as counsel, even after an unsealing order, to say, hey, client, here's a whole spreadsheet that you might enjoy looking at when I know that there's an appeal that's coming. Right. But if we were to deny the appeal, if we were to deny it, you know, and then affirm the district court, then those documents are there. Oh, yeah. Correct. And, I mean, they really are a trove. And I would say that, again, the nature of this type of investigation and litigation creates this very scenario where you essentially have the government saying to all of the competitors – and remember, this is a two-dimensional sort of competitive analysis because it's the insurers vis-a-vis the providers, but then the insurers vis-a-vis each other. And so you essentially create a treasure trove of every information that anybody would want to engage in anti-competitive behavior. For all we know, counsel for your competitors could be sitting right here. They could be. Thank you. Thank you. Thank you very much, Your Honor. And I would ask if you could have a transcript prepared of this oral argument. Sure. Thank you. Well done. Thank you for being with us. Thank you. Thank you.